■ Thomas J. Dietz, Appellant-Respondent, v Cynthia

DIETZ, Respondent-Appellant. [610 NYS2d 981] —Peters, J. Cross appeals (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Friedman, J.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered December 20, 1991 in Westchester County, upon a decision of the court.

Following a trial of this action, Supreme Court, *inter alia,* dissolved the marriage, awarded defendant maintenance in the amount of $400 per week, awarded defendant counsel fees and distributed the marital property. From the judgment entered, plaintiff appeals the underlying order and defendant cross-appeals.

Addressing first the award to defendant of the marital home located in Dutchess County, we find that the record supports Supreme Court's determination that defendant had always been the sole owner of such home and that the court properly analyzed plaintiff's equitable interest, if any, in such residence. After a review of the record, we find that with such home having a net value of $100,000, the credit awarded to plaintiff of the sum of $25,000, representing repayment for contributions made in the form of downpayments, repairs and mortgage payments, was supported by the record and a proper exercise of discretion after carefully weighing the circumstances presented *(see, Butler v Butler,* 171 AD2d 89). We also find support for Supreme Court's direction that defendant indemnify plaintiff from and against any liability for any mortgages, loans or other financing in connection with the residence. We do, however, find merit in plaintiff's contention that defendant be similarly directed to promptly pay said obligations if plaintiff is listed as a co-obligor on any such debt and, should plaintiff be compelled to make payments in connection with such obligation as a result of defendant's nonpayment, that plaintiff shall be given a credit against the obligations imposed upon him pursuant to Supreme Court's judgment.

Addressing next the distribution of stock, we first note that plaintiff has had a broker's license for property, casualty and life insurance and has been in the insurance business for approximately 25 years. At the time of the marriage, plaintiff was the sole shareholder of Thomas J. Dietz Corporation (hereinafter Dietz), a business incorporated in 1967. Supreme Court found that in March 1978, prior to the parties' marriage, plaintiff sold the "Book" of Dietz for no consideration

but received in exchange an annual salary of $30,000 plus commissions. Supreme Court further found that approximately one year after plaintiff and defendant were married, plaintiff regained the "Book" of Dietz and defendant began working there, ultimately becoming vice-president of Dietz and in charge of running the day-to-day operation while plaintiff devoted his energies to establishing other businesses. Supreme Court noted that plaintiff estimated the value of Dietz to be between $250,000 and $300,000 prior to the marriage, yet testified that its value was between $150,000 and $175,000 in 1987. Finding the valuation testimony of plaintiff to be incredible in light of the sale of Dietz in 1978 for no consideration and the subsequent sale of Dietz in November 1988 for $100,000, Supreme Court properly awarded defendant $50,000, representing one half of the profit realized upon the sale of Dietz in 1988 considering its zero value at the time of the parties' marriage and notwithstanding its finding that Dietz was separate property (see, Butler v Butler, supra; Wegman v Wegman, 123 AD2d 220, mot to amend remittitur granted 123 AD2d 238). Although plaintiff contends that Supreme Court used the incorrect valuation date, we find such contention to be without merit (see, Domestic Relations Law § 236 [B] [4] [b]; Basile v Basile, 199 AD2d 649; Wegman v Wegman, supra).

In thereafter reviewing the various other business ventures pursued by plaintiff while defendant was working for Dietz, i.e., Medical Quadrangle, Inc. (hereinafter Med Quad), Medical Professional Liability Agency Limited (hereinafter Med Pro) and Kentfield Brokerage, Inc., as well as plaintiff's stock interest in Frontier Insurance Group (hereinafter Frontier), we initially note that Supreme Court found that while plaintiff's settlement from Med Quad in the amount of $268,000 could not readily be traced, it found that "plaintiff's holdings in Frontier appear to be the true end of the trail". As to Med Pro, Supreme Court found that because such business was sold to Frontier in exchange for 15,800 shares of Frontier's restricted stock, as well as an employment contract guaranteeing plaintiff $100,000 in yearly salary for three years with commissions and benefits, defendant was entitled to 50% of the shares of Frontier stock received upon such sale. Accordingly, it awarded defendant 7,900 shares of Frontier stock.

Because the majority of plaintiff's assets were in Frontier stock, all held in three separate accounts, Supreme Court attempted to equitably distribute such stock. The error occurred, however, with Supreme Court's failure to account for

its previous distribution before equitably distributing the stock in such accounts. Supreme Court first determined that the parties would retain their own IRA accounts and the stocks contained therein. Plaintiff contends and defendant concedes that the court incorrectly included 1,815 shares contained in one such account toward plaintiff's holdings subject to distribution because such stock in that account was plaintiff's IRA account.

The next error we note is that the 50% of 15,800 shares of Frontier stock received by plaintiff in 1987 as a result of the Med Pro sale was already distributed. Accordingly, we must deduct the 15,800 shares from another such account from what is ultimately determined to be plaintiff's holdings subject to further distribution. Thus, what is left is the account holding 25,137 shares of Frontier stock, as well as the additional 15 shares in the account holding the shares received as a result of the Med Pro sale. Using Supreme Court's valuation of these shares, we determine the value of the remaining stock to be $276,672. Because Supreme Court previously awarded defendant 25% of the value of what it found to be plaintiff's stock holdings—34,867 shares valued at $383,500— we modify Supreme Court's distributive award to defendant from $96,000 to $69,000. On this issue, we find no merit to plaintiff's contentions that it was error to require him to assume all of the debt in connection with this property. Supreme Court properly ordered each party to retain their own debts and the record amply supports the finding that the majority of the debts plaintiff seeks to have equitably divided were not "predominantly * * * marital" (Gelb v Brown, 163 AD2d 189, 193) or "incurred for marital benefit" (Savage v Savage, 155 AD2d 336, 337). With regard to Supreme Court's additional $100,000 distributive award to defendant, we find such award to have no basis in the record.

Addressing next the award of maintenance, we find that Supreme Court properly reviewed each and every factor listed in Domestic Relations Law § 236 (B) (6) (a). The record supports the court's conclusion that at the time of trial, plaintiff's income and future earning capacity was secure due to his well-recognized name in the insurance industry. At the time of trial, plaintiff was earning close to eight times what defendant was earning. Moreover, plaintiff had a three-year employment contract subject to renewal at $100,000 per year plus commissions and benefits, whereas defendant had just started a new job in an unfamiliar field, after a period of unemployment, and had no guarantee of future security.

While we find that Supreme Court erroneously attributed income and assets to plaintiff when it analyzed the respective financial circumstances of the parties subsequent to stock distribution, we conclude that the court properly determined the maintenance award, taking into account the parties' age, experience and ability to earn *(see, Majauskas v Majauskas,* 61 NY2d 481, 494).

Addressing next plaintiff's contentions that Supreme Court erred in awarding counsel fees, we note that the court made no such award and only directed plaintiff to pay the sum of $15,000 to defendant's attorneys to be held in escrow until a final decision is rendered after a hearing. An award of counsel fees would be well within the discretion of Supreme Court based upon the parties' relative financial circumstances *(see,* Domestic Relations Law § 237 [a]; *DeCabrera v Cabrera-Rosete,* 70 NY2d 879, 881; *Maloney v Maloney,* 137 AD2d 666, 668-669, *lv denied* 72 NY2d 808).

As to all other contentions raised by the parties, we find them to be without merit and not worthy of further comment.

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by eliminating the distributive award to defendant in the sum of $100,000, modifying the $96,000 distributive award to an award of $69,000, ordering defendant to promptly pay all obligations on the marital residence in which plaintiff is a co-obligor or the sole obligor, and that in the absence of timely payment plaintiff shall be given a credit toward any amounts he pays in connection with such obligations, and, as so modified, affirmed.